**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **DAVID AND DANA VENDEVEN,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:20-cv-00056** |
| | ) | **Judge Aleta A. Trauger** |
| **WYNDHAM VACATION RESORTS,** | ) | |
| **INC.; WYNDHAM REWARDS, INC.;** | ) | |
| **CLUB WYNDHAM ACCESS;** | ) | |
| **and JOHN DOES 1–100,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Before the court is the defendants' Motion to Dismiss (Doc. No. 25), under Rules 4(bm), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth herein, the motion will be granted, and the plaintiff's Complaint will be dismissed without prejudice, except for Count IX thereof, which will be dismissed with prejudice.

## I.     PROCEDURAL BACKGROUND AND FACTUAL ALLEGATIONS

Plaintiffs David Vandeven and Dana Vandeven, who reside in Missouri, filed the Complaint initiating their lawsuit in this court on September 14, 2020, invoking the court's diversity jurisdiction under 28 U.S.C. § 1332 and asserting primarily fraud-based claims under Tennessee law. (Doc. No. 1.) All claims are asserted against all defendants, who are identified as Wyndham Vacation Resorts, Inc. ("WVR"), Wyndham Rewards, Inc. ("WR"), Club Wyndham Access ("CWA"; collectively with WVR and WR, the "Wyndham defendants"), and "John Does 1–100" ("John Doe defendants").

WVR is a Delaware corporation with its principal place of business in Orlando, Florida

and a registered agent for service of process in Brentwood, Tennessee. (Doc. No. 1 ¶ 4.) WR is a Delaware corporation with its principal place of business in Parsippany, New Jersey. Its registered agent in Tennessee is the same as WVR's. (*Id.* ¶ 5.) The Complaint contains no factual allegations regarding CWA, its affiliation with the other Wyndham defendants, its place of incorporation, or its principal place of business. The John Doe defendants are alleged to be employed by one or more of the Wyndham defendants. (*Id.* ¶¶ 6–7.) Despite the absence of any information regarding CWA or the citizenship of the John Doe defendants, the plaintiffs assert that diversity of citizenship exists between them and each defendant and that the amount in controversy exceeds $75,000, for purposes of diversity jurisdiction.

WVR allegedly "markets, sells and finances vacation interests, provides property management services to property owners' associations, and develops vacation ownership resorts." (Doc. No. 1 ¶ 25.) The Wyndham defendants generally are alleged to be in the business of owning and/or operating timeshare properties and other resorts located in Tennessee and elsewhere and, more specifically, to be in the business of marketing and selling "vacation ownership interests"— also known as timeshare interests—and providing "consumer financing." (*Id.* ¶¶ 17, 27, 44*.*)

The plaintiffs "own Wyndham-related timeshare or vacation club membership points and/or properties." (*Id.* ¶ 41.) They have "from time to time" traded in Wyndham timeshare properties and/or points in exchange for other Wyndham timeshare properties, points, or other benefits. (*Id.* ¶ 42.) The plaintiffs allege that Wyndham, after pressuring them to make these purchases and exchanges, has "systematically eliminated benefits" that impact the plaintiffs' ability to use their Wyndham points and properties. (*Id.* ¶ 43.)

The plaintiffs' claims are premised upon allegations that Wyndham engaged in fraudulent activity, including, for example, that it:

(1) advertised timeshares sold to the plaintiffs with the intent not to sell them as advertised;

(2) engaged in "bait and switch" tactics by using advertising to lure "the consumer" and then inducing the consumer to buy different and more expensive items;

(3) made false and misleading statements of fact concerning the reasons for "timeshare price reductions for timeshares being sold to Plaintiffs";

(4) falsely told the plaintiffs they were attending "owner education events or update meetings" when, in fact, they were attending "extremely lengthy, high-pressure sales presentations";

(5) falsely told the plaintiffs that purchase offers would expire if not accepted that day;

(6) engaged in high-pressure sales tactics, surrounding the plaintiffs by up to six salespeople at a time, causing the plaintiffs to be confused about what they were purchasing and about the terms and conditions of their purchases;

(7) misled the plaintiffs about the facts of the price, costs, expenses and values of the Wyndham timeshare points and properties the plaintiffs were purchasing;

(8) falsely telling the plaintiffs their purchases of timeshare points and properties were "sound financial decision[s]";

(9) falsely telling the plaintiffs their new purchases were more valuable than their prior purchases, that their purchases would increase in value, could be sold at a profit, or would be a sound investment for their children to inherit;

(10) falsely informed the plaintiffs that they could refinance their purchases through their own bank at a lower interest rate;

(11) falsely told the plaintiffs that they would be "able to vacation anywhere at any time";

(12) falsely told the plaintiffs they would be able to rent their timeshares;

(13) unfairly competed with the plaintiffs by openly marketing and renting units at the same facilities at which the plaintiffs owned timeshares, without disclosing to the plaintiffs that they would do so when the plaintiffs bought their properties;

(14) falsely told the plaintiffs that Wyndham's credit card points program was "greater than it was in reality";

(15) induced the plaintiffs' to "upgrade" by falsely telling them they were afforded a "credit" in the amount of the equity in an existing timeshare; and

(16) falsely characterized Wyndham's "right of first refusal" as a "buyback program."

(Doc. No. 1 ¶¶ 42–66.)

The plaintiffs further allege that they were not given the opportunity to discuss "the deal" or their finances among themselves or with legal counsel or anyone else prior to making purchase decisions, that they reasonably relied on Wyndham's misrepresentations and omissions when deciding to purchase timeshare points and properties, and that they felt "intense pressure" to purchase Wyndham timeshare points and properties. (*Id.* ¶¶ 68–71.) The pressure was exerted by Wyndham employees, who "forced" and "coerced" the plaintiffs to make hurried decisions by becoming angry and demeaning if the plaintiffs did not act quickly. (*Id.* ¶¶ 72–74.)

The plaintiffs subsequently learned that many of the representations made to them during sales presentations were false, made pursuant to Wyndham policy and corporate philosophy, and made for the purpose of inducing the plaintiffs to purchase Wyndham timeshare points and properties. The plaintiffs allege that Wyndham sold them timeshare points and properties at hugely inflated prices and that the timeshare points and properties are an "illiquid asset with no aftermarket" value, making it "nearly impossible for Plaintiffs to resell" their timeshare points or properties. (*Id.* ¶¶ 75–81.)

The plaintiffs signed numerous timeshare closing contracts after being bullied and misled into signing them. The contracts were form, standardized contracts that were presented to the plaintiffs on a take-it-or-leave-it basis, with no opportunity to make changes or to negotiate their terms. (*Id.* ¶¶ 82–84.) The plaintiffs were not given sufficient opportunity to read through these contracts, as the defendants rushed them through the closing process, without allowing plaintiffs the opportunity to consult with counsel or to fully understand the terms of the agreements. (*Id.* ¶¶ 85–88.) The defendants also did not inform the plaintiffs of their opportunity to rescind or of the

rescission deadline and presented the waiver and disclosure documents to them it such as a way as to deprive the plaintiffs of the opportunity to understand the disclosures and waivers. (*Id.* ¶¶ 89–92.)

Based on these factual allegations, the Complaint asserts causes of action for (1) fraud; (2) fraudulent misrepresentation; (3) fraudulent inducement; (4) misrepresentation by concealment; (5) negligent misrepresentation; (6) violation of the Tennessee Timeshare Act, Tenn. Code Ann. § 66-32-101 *et seq.*; (7) breach of contract; (8) unjust enrichment, and (9) "contract of indefinite duration" in violation of Florida law. Every paragraph of the factual allegations in the Complaint is incorporated under each "Count," and each "Count" is apparently stated against every defendant indiscriminately.

The Complaint was filed electronically on September 14, 2020. The court's electronic record does not reflect that summonses were filed with the Complaint, and the docket does not reflect that the court issued any summonses at or near that date, as would have occurred if summonses had been submitted electronically with the Complaint. Chief Judge Crenshaw, to whom the case was initially assigned, referred it to Magistrate Judge Alistair Newbern for case management, and Judge Newbern scheduled an initial case management conference for November 16, 2020. (Doc. Nos. 6, 7.) In a subsequent Order entered on November 12, 2020, Judge Newbern postponed the initial case management conference to January 4, 2021, based on the fact that no defendant had yet entered an appearance. (Doc. No. 8.)

On December 30, 2020, then 107 days after the filing of the Complaint, the plaintiffs, through counsel, filed a Motion to Continue Initial Case Management Conference. (Doc. No. 9.) In that motion, the plaintiffs first represent that they filed the Complaint "along with summonses for Defendants" on September 16, 2020. (Doc. No. 9, at 1.) As indicated above, neither of those

representations is correct, as no summonses were filed with the Complaint, and the Complaint was filed on September 14. The motion further states that plaintiffs' counsel had contacted the Magistrate Judge's chambers sometime prior to November 12, 2020 to request the postponement of the initial case management conference from November 16, 2020 to January 4, 2021 based on the plaintiffs' having failed to secure service of process by then (Doc. No. 9, at 1), which apparently resulted in Judge Newbern's November 12 Order continuing the conference. In other words, counsel was aware no later than November 12, 2020 that service had not yet been effected. Counsel represents that, "[d]uring this period," an associate employed by him had been delegated to ensure that service of process upon the defendants was effected. The associate resigned without having done so, but plaintiff's counsel did not realize that service had not been made upon the defendants. (*Id.* at 2.) Counsel expressly admits, however, that, by the time he filed the December 30, 2020 motion, he was aware that his purported belief that the Complaint and summonses had been served on the defendants was "obviously and regrettably mistaken." (*Id.*) He affirmatively averred that he "would be serving Defendants the first week of January 2021." (*Id.*) Judge Newbern granted the Motion to Continue but noted that her order did not "address the timeliness of Plaintiffs' service of Defendants." (Doc. No. 10.) The initial case management conference was reset for February 18, 2021.

Despite counsel's stated intention to serve the defendants the first week of January 2021 and the court's express recognition that the timeliness of service was a matter yet to be resolved, plaintiffs' counsel did not file summonses for WVR and WR until February 11, 2021 (Doc. Nos. 14, 15); the summonses were executed and issued by the Clerk's Office the same day (Doc. No. 16). No other summonses were filed or issued. On February 16, 2021, no defendant having yet entered an appearance, the Magistrate Judge again postponed the initial case management

conference. (Doc. No. 17.) Counsel for the plaintiffs never filed proof of service, but counsel for the Wyndham defendants states that service upon WVR and WR was finally perfected on February 17, 2021, 156 days after the filing of the Complaint. (Doc. No. 26, at 2.) Service has never been effected on CWA.

The Wyndham defendants now seek dismissal of all claims asserted against them on the basis that (1) WVR and WR were not served until 156 days after the filing of the Complaint, well in excess of the 90 days allotted by Rule 4(m) of the Federal Rules of Civil Procedure, and the plaintiffs never sought an extension of the deadline and have never offered good cause for the delay; (2) the fraud-based claims in the Complaint are not pleaded with the particularity required by Rule 9(b) and must be dismissed under Rule 12(b)(6); (3) the Complaint fails to allege sufficient facts to support claims for breach of contract and unjust enrichment, under Rule 8, and those claims are subject to dismissal under Rule 12(b)(6) as well; and (4) Tennessee does not recognize a claim based on "contract of indefinite duration," and the plaintiffs provide no basis for bringing such a claim under Florida law. (Doc. Nos. 25, 26.)

In their Response (Doc. No. 35), the plaintiffs make no effort to defend their "contract of indefinite duration" claim, but they contend that (1) the court should exercise its discretion to find that the plaintiffs have articulated excusable neglect and good cause for extending the service deadline; (2) their fraud claims are pleaded with the requisite particularity, because "[t]he date and place of the fraud was the date and place of the sales presentations and the date and place of the signing of the contracts," and "Defendants have the contracts and records of their transactions with Plaintiffs [and] also know the locations and dates of each sales presentation to Plaintiffs and each contract entered into with Plaintiffs" (Doc. No. 35, at 6.); and (3) the Complaint alleges facts sufficient to state colorable claims for breach of contract; and (4) the unjust enrichment claim is

not subject to dismissal because the written agreements signed by the plaintiffs are "void" (*id.* at 9).

The Wyndham defendants' Reply (Doc. No. 36) generally asserts that the plaintiffs fail to make the showing required to overcome the conclusion that dismissal is required under Rule 4(m) and Rule 12(b)(5) and, alternatively, under Rule 12(b)(6).

## II.     FAILURE TO EFFECT TIMELY SERVICE OF PROCESS

### A.     Legal Standards

Rule 4 provides that, "[o]n or after filing the complaint, the plaintiff may present a summons to the clerk for signature and seal." Fed. R. Civ. P. 4(b). Once the summons is "properly completed, the clerk must sign, seal, and issue it to the plaintiff for service on the defendant. A summons . . . must be issued for each defendant to be served." *Id.*

The rule also provides the procedure for requesting and obtaining a waiver of service of process. Notably, such a request must be in writing and addressed, in the case of a corporate defendant, to "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(d). Unless a proper request for waiver is made and accepted, "proof of service must be made to the court . . . by the server's affidavit." Fed. R. Civ. P. 4(l)(1).

The current version of Rule 4 allows 90 days for achieving service of process:

> If a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specific time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).[1] A Rule 12(b)(5) motion is the proper vehicle for challenging the failure to

---

[1] Rule 4(m) was amended in 2015 to reduce the service time from 120 to 90 days.

deliver a summons and complaint in accordance with Rule 4(m). *See generally* 5B Charles Alan Wright *et al.*, Federal Practice & Procedure, Civ. § 1353 (3d ed.).

The Sixth Circuit has repeatedly held that, absent a showing of good cause" for failure to meet the Rule 4(m) deadline, dismissal is required. *See, e.g.*, *Johnson v. Smith*, 835 F. App'x 114, 115 (6th Cir. 2021) ("[U]nder Civil Rule 4(m), if the summons is not served within 90 days, the court must dismiss the action unless the plaintiff has shown 'good cause' for failing to serve within 90 days; [if good cause is shown,] then the court may extend the deadline for service."); *accord Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 521 (6th Cir. 2006) ("Dismissal of the action 'shall' follow unless the 'plaintiff shows good cause' for failure to meet the [90]-day deadline."); *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996) ("Absent a showing of good cause to justify a failure to effect timely service, the Federal Rules of Civil Procedure compel dismissal." (citing *Habib v. Gen. Motors Corp.*, 15 F.3d 72, 73 (6th Cir. 1994)); *Friedman v. Estate of Presser*, 929 F.2d 1151, 1157 (6th Cir. 1991) ("Absent a showing of good cause . . . , the language of Rule 4(j) [now 4(m)] mandates dismissal.").

The determination of whether good cause has been shown lies within the discretion of the district court. *Nafziger*, 467 F.3d at 521 (citing *Friedman*, 929 F.2d at 1157). The party opposing the motion to dismiss for insufficient service bears the burden of stablishing good cause, which "necessitates a demonstration of why service was not made within the time constraints." *Id.* (quoting *Habib*, 15 F.3d at 73).

The Sixth Circuit has never provided a precise definition of "good cause," but, "[g]enerally, 'good cause' means 'a reasonable, diligent effort to timely effect service of process.'" *Johnson*, 835 F. App'x at 115 (quoting *Pearison v. Pinkerton's Inc.*, 90 F. App'x 811, 813 (6th Cir. 2004)). Mere "lack of prejudice and actual notice [to the defendant] are insufficient" to establish good

cause, as is "[m]istake of counsel or ignorance of the rules." *Id.* (citing *Moncrief v. Stone*, 961 F.2d 595, 597 (6th Cir. 1992)); *accord Nafziger*, 467 F.3d at 521–22 (affirming dismissal under Rule 4(m) where the justifications offered to establish "good cause" were (1) that counsel had discussed waiver of service of process with the defendant; (2) "significant personal matters involving the welfare of Counsel's young children caused Counsel substantial problems," and (3) "then co-counsel was not providing assistance"); *Friedman*, 929 F.2d at 1155, 1157 ("[A]ctual knowledge of the law suit does not substitute for proper service of process," and "[c]ourts that have considered this issue . . . agree that counsel's inadvertent failure or half-hearted efforts to serve a defendant within the statutory period does not constitute good cause." (citing *Hart v. United States*, 817 F.2d 78, 81 (9th Cir. 1987) (holding that secretarial negligence in serving defendant is chargeable to counsel); *Lovelace v. Acme Markets, Inc.*, 820 F.2d 81, 84, 85 (3d Cir. 1987) (holding that, when "delay is the result of inadvertence of counsel, it need not be excused" and that plaintiff's counsel was not justified in relying on the misrepresentation of specially appointed process server that process had been served on defendant)).

### B. The Plaintiffs Have Not Shown Good Cause

As indicated by the plaintiffs' Motion to Continue Initial Case Management Conference, counsel already knew, prior to November 16, 2020 that the defendants had not yet been served. (*See* Doc. No. 9, at 1.) Moreover, a cursory glance at the court's online docket at that time would have immediately revealed that no summonses had been issued. By the time the plaintiffs filed their Motion to Continue Initial Case Management Conference on December 30, 2020, counsel already knew that no attempt to effect service had been made, and he blamed the failure on his reliance on his associate. At that point, the deadline to effect service of process had already expired, but by less than two weeks. Counsel did not move to extend the service deadline; instead, he affirmatively averred that he planned to serve the defendants within the next week and that the

defendants "would not be prejudiced by the delay in service." (Doc. No. 9, at 2.) Counsel thereafter waited an additional six weeks before requesting that summonses be issued to WVR and WR. (Doc. Nos. 14, 15.) While service has apparently been effected, plaintiffs have never filed proof of service with the court.

The only justifications counsel provides now in an effort to establish "good cause" for failing to effect service of process until 156 days after filing the Complaint are (1) a lack of effective communication between himself and his associate due to Covid-related restrictions; and (2) the fact that he had notified counsel for Wyndham of the suit and asked whether counsel would accept service of process. (Doc. No. 35, at 3.) The plaintiffs do not refute the Wyndham defendants' assertion that the registered agent for service of process for both WVR and WR, identified on the Tennessee Secretary of State's website, is located in Brentwood, Tennessee, as is plaintiffs' counsel's office.

As set forth above, even assuming that counsel for Wyndham had actual knowledge that the lawsuit had been filed (and that counsel's knowledge can be imputed to the Wyndham defendants), that knowledge, even combined with counsel's miscommunication with his associate, does not constitute good cause. Nothing about counsel's course of action suggests a "reasonable, diligent effort to timely effect service of process.'" *Johnson*, 835 F. App'x at 115. The lack of diligence began with the failure to prepare summonses and submit them with the Complaint. It continued through the failure to check the docket to verify why summonses had not been issued shortly after the electronic filing of the Complaint and the failure to ascertain the status of service or obtain a valid waiver of service in early November—the first time the court postponed the initial case management conference based on lack of service. It culminated in counsel's failure to act swiftly following his admitted realization in late December 2020 that summonses had never been

prepared or issued and that service of the summonses and Complaint had never even been attempted. Rather than filing a motion to extend the deadline and moving quickly to effect service at that point, when the court might have been inclined to grant some indulgence, the plaintiffs waited another six weeks before even submitting summonses to the Clerk of Court. This lack of diligence does not constitute good cause. The court further notes that no effort has ever been made to appropriately identify or serve CWA, and the plaintiffs submit no explanation for that oversight.

Because the plaintiffs have not shown good cause for the failure to effect timely service of process, dismissal of the Complaint without prejudice, under Rules 4(m) and 12(b)(5), is compelled. *Byrd*, 94 F.3d at 219.

## III.    RULES 9(B) AND 12(B)(6)

Prejudice to the plaintiff is not necessarily a sufficient basis for overlooking an absence of good cause, but, even assuming that it is a factor that can be considered, dismissal of the Complaint will not work any particular hardship on the plaintiffs. As the defendants argue in the alternative, the factual allegations in support of the plaintiff's fraud-based claims are not remotely pleaded with the particularity required by Rule 9(b), and the non-fraud-based claims are not adequately pleaded under the less demanding standard imposed by Rule 12(b)(6). Accordingly, the court also finds that dismissal under Rule 12(b)(6) is warranted.

### A.    Pleading Standards

For purposes of a motion to dismiss under Rule 12(b)(6), the court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* Likewise, the court is not required to accept as true "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id.* at 681. The question is whether the remaining *factual* allegations plausibly suggest an entitlement to relief. If not, the pleading fails to meet the standard of Fed. R. Civ. P. 8 and must be dismissed pursuant to Rule 12(b)(6).

Besides being broadly subject to Rule 12, the pleading of fraud-based claims is also governed by Rule 9 of the Federal Rules of Civil Procedure, which provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This standard unquestionably applies to all of the plaintiffs' fraud-based claims. *Accord Hamm v. Wyndham Resort Dev. Corp.*, No. 3:19-cv-00426, 2019 WL 6273247, at *9 (M.D. Tenn. Nov. 25, 2019)); *Hodge v. Craig*, 382 S.W.3d 325, 342 (Tenn. 2012); *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 551 (Tenn. Ct. App. 2012).

The Sixth Circuit has explained that Rule 9 requires a plaintiff: "(1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent." *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012) (citation omitted). In addition, when a plaintiff pursues fraud claims against multiple defendants, it typically must make "specific allegations as to each defendant's alleged involvement." *N. Port Firefighters' Pension–Local Option Plan v. Fushi Copperweld, Inc.*, 929 F. Supp. 2d 740, 773 (M.D. Tenn. 2013) (Haynes, C.J.). That is, mere "'group pleading' . . . fails to meet . . . [Rule] 9(b)'s specificity requirements." *D.E.&J Ltd. P'ship v. Conaway*, 284 F. Supp. 2d 719, 730 (E.D. Mich. 2003), *aff'd*, 133 F. App'x 994 (6th Cir. 2005);

*see also In re First Union Corp. Sec. Litig.*, 128 F. Supp. 2d 871, 888 (W.D.N.C. 2001) ("'[G]roup pleading' is clearly inconsistent with Rule 9(b)'s express requirements of specificity." (citation omitted)).

Courts have, however, recognized that fraud may involve subterfuge and misdirection that leave a victim in the dark about many of the details of a scheme, even after he realizes he has been defrauded. Accordingly, "Rule 9(b)'s particularity requirement may be relaxed when certain information is solely within the defendant's knowledge." *Traxler v. PPG Indus., Inc.*, 158 F. Supp. 3d 607, 630 (N.D. Ohio 2016) (quoting *U.S. Sec. & Exch. Comm'n v. Blackwell*, 291 F. Supp. 2d 673, 691 (S.D. Ohio 2003)).

### B.    The Fraud Claims Are Inadequately Pleaded

Even under a somewhat relaxed standard, the Complaint in this case does not plead the fraud claims with the requisite particularity. First, the plaintiffs do not allege *when* the allegedly fraudulent conduct took place. Although the plaintiffs claim that the dates are revealed in their contracts with the defendants, the plaintiffs have not supplied those contracts or stated when they were signed. The only reference to time in the Complaint appears when the plaintiffs allege that they were pressured from "time to time" to upgrade the products purchased from the defendants. (Doc. No. 1 ¶ 42.) Thus, the Complaint does not provide even the most rudimentary timeframe for the events giving rise to the plaintiffs' claims. The timeframe for the plaintiffs' claims is not a matter that is solely within the defendants' knowledge, and the plaintiffs make no explanation for their failure to provide some chronological detail.

Second, the plaintiffs do not allege *where* the fraud took place. Other than stating that the plaintiffs purchased "timeshare properties/points from Defendants while at Defendants' offices and/or resorts located in Tennessee, among other states" (*Id.* ¶ 44), the Complaint contains no reference to place. This is true even with respect to the plaintiffs' allegations that they were

pressured into attending, and apparently did attend, owner education events or meetings that turned out to be "extremely lengthy, high-pressure sales presentations." (*Id.* ¶ 52.) Again, the plaintiffs cannot plausibly argue that *where* their claims arose is a matter solely within the defendants' knowledge.

Third, the plaintiffs make no effort to distinguish among the various Wyndham defendants or to allege which of the defendants employed the sales representatives with whom the plaintiffs dealt, and they do not indicate who made the allegedly fraudulent statements. The statements are all attributed to unnamed sales associates. To justify this lack of specificity, the plaintiffs state that "[i]t is unclear to [them] whether Defendants' employees are also employees of one or more of the other Defendants and/or vice versa. Therefore, Plaintiffs will refer to all Defendants jointly as 'Wyndham.'" (*Id.* ¶ 7.) But the plaintiffs are presumably in possession of their agreements with the Wyndham defendants, which likely identify the entities with which the plaintiffs contracted and at least some of the individual representatives with whom the plaintiffs dealt. The plaintiffs' explanation that the employees with whom they dealt might be employed by more than one entity does not justify the plaintiffs' lack of specificity, because they do not explain the source of their confusion regarding with which entity or entities they were interacting. They also do not allege facts suggesting a blurring of corporate formalities or providing a basis for liability on the part of the parent or sibling corporations of the entity or entities with which they actually had dealings.

While there may be some facts within the possession of the defendants to which the plaintiffs do not have access, including the exact nature of the relationships between the various Wyndham corporate entities, the plaintiffs do not seek to avoid dismissal on the grounds that they lack access to key facts; nor do they even request leave to amend the Complaint. Instead, they double down, asserting that the fraud claims are pleaded with adequate particularity. They are not.

Rule 9(b)'s flexibility with regard to information outside the reach of a plaintiff does not excuse all or even most of the plaintiffs' omissions in this case. If there is information the plaintiffs lack— for example, the precise date or wording of a communication—they could have simply said so in the statement of their claims. Rule 9(b) does not require perfect recollection or knowledge—it merely requires enough particularity for each defendant to know what the claims against him or it are about. *Accord Hamm*, 2019 WL 6273247, at *4–5; *Triumph Hosp., LLC v. Constr. Mgmt., Inc.*, No. 3:19-CV-00353, 2019 WL 3841942, at *6 (M.D. Tenn. Aug. 15, 2019). The Complaint's repeated reference to "defendants" and "Wyndham" is unacceptably vague.

In sum, the fraud-based claims are subject to dismissal on the basis that they are not pleaded with the particularity required by Rule 9(b).

### C. The Complaint Fails to Allege Facts Supporting Breach of Contract

The defendants argue that the plaintiffs' breach of contract claim is subject to dismissal for failure to state a claim for which relief may be granted, because the facts alleged in support of the breach of contract claim are so vague and conclusory that they do not satisfy the requirements of Rule 8 of the Federal Rules of Civil Procedure. The court agrees on this front as well.

To establish a claim for breach of contract under Tennessee law, a plaintiff must prove the existence of an enforceable contract, a non-performance amounting to a material breach of that contract, and resulting damages. *See, e.g.*, *Nw. Tenn. Motorsports Park, LLC v. Tenn. Asphalt Co.*, 410 S.W.3d 810, 816–17 (Tenn. Ct. App. 2011). Under *Twombly* and *Iqbal*, the court "may no longer accept conclusory legal allegations that do not include specific facts necessary to establish the cause of action." *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs., LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (citation and internal quotation marks omitted). "Rather, the complaint has to 'plead[] factual content that allows the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

Under "Count VII" for "Breach of Contract," the Complaint incorporates all of the previously stated factual allegations. The plaintiffs then state: "In the alternative, . . . Defendants entered into a contract with Plaintiffs containing oral and written promises, obligations and duties." (Doc. No. 1 ¶ 186.) They assert that "Plaintiffs paid monetary consideration to Defendants," that "Defendants had a duty to meet the promises and obligations per the oral and written contracts," and that, "[a]s outlined above, Defendants breached those duties to Plaintiffs," thus causing the plaintiffs monetary damages. (*Id.* ¶¶ 187–90.) These assertions amount to no more than the "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that, under *Iqbal*, do not suffice to state a claim for relief. *Iqbal*, 556 U.S. at 678. The Complaint, moreover, does not identify any particular contractual obligation that any particular defendant failed to satisfy; nor does it link any such breach to damages. The Complaint, in short, does not plead factual content that permits the reasonable inference that the defendants breached any of the parties' written contracts, and it does not actually allege the formation of any oral contracts, much less their breach.

The Complaint fails to state a colorable claim for breach of contract. The claim is subject to dismissal under Rule 12(b)(6).

### D. The Unjust Enrichment Claim Is Inadequately Pleaded

The elements of an unjust enrichment claim are: "1) [a] benefit conferred upon the defendant by the plaintiff; 2) appreciation by the defendant of such benefit; and 3) acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) (citation and internal quotation marks omitted). "Unjust enrichment is a quasi-contractual theory or is a contract implied-in-law in which a court may impose a contractual obligation where one does not exist." *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d

592, 596 (Tenn. 1998) (citing *Paschall's Inc. v. Dozier*, 407 S.W.2d 150, 154–55 (Tenn. 1966). "Courts will impose a contractual obligation under an unjust enrichment theory when: (1) there is no contract between the parties or a contract has become unenforceable or invalid; and (2) the defendant will be unjustly enriched absent a quasi-contractual obligation." *Id.* (citation omitted). "A contract cannot be implied, however, where a valid contract exists on the same subject matter." *Jaffe v. Bolton*, 817 S.W.2d 19, 26 (Tenn. Ct. App. 1991). Thus, a party seeking to recover under a theory of unjust enrichment "must demonstrate . . . [that] there [is] no existing, enforceable contract between the parties covering the same subject matter." *Smith v. Hi-Speed, Inc.*, 536 S.W.3d 458, 480 (Tenn. Ct. App. 2016) (citation omitted).

Under the heading "Action for Unjust Enrichment," the Complaint sets forth barebones assertions of the elements of an unjust enrichment claim: that the defendants received a monetary benefit from the plaintiffs without consideration, that they "failed or refused to return the monies paid to Defendants" and that the defendants instead "repossessed the property valued in excess of $170,000 . . . without any compensation to Plaintiffs," that the defendants "failed to provide Plaintiff [sic]with any consideration or value for same," and that they would be "unjustly enriched by keeping the monies received from Plaintiffs." (Doc. No. 1 ¶¶ 192–94.)

The defendants argue that the plaintiffs' unjust enrichment claim must be dismissed both because the plaintiffs' factual assertion that the defendants provided consideration for the plaintiffs' payments serves as a basis for dismissal of the unjust enrichment claim (Doc. No. 26, at 12 (citing *McLearn v. Wyndham Resort Dev. Corp.*, No. 3:19-cv-00004, 2020 WL 1189844, at *9 (M.D. Tenn. Mar. 11, 2020) (Richardson, J.))), and because the allegations in support of the claim for unjust enrichment amount to no more than a "threadbare recital of the elements of this claim that is devoid of any specificity or factual allegations supporting these recitals" (*id.* (citing

*Hamm*, 2019 WL 6273247, at * 9).) In their Response, the plaintiffs state only that the claim is not subject to dismissal, because "Plaintiffs assert that the contracts signed by Plaintiffs are void and, therefore[,] not enforceable." (Doc. No. 35, at 9.)

The court finds that the allegations supporting the unjust enrichment claim are as vague and conclusory as the allegations supporting breach of contract. The claim is subject to dismissal under Rule 12(b)(6), for failure to satisfy Rule 8's pleading requirements.

### E.    "Contract of Indefinite Duration" Is Not a Cognizable Claim

This claim, Count IX of the Complaint, is pleaded under Florida law, but the plaintiffs do not explain why Florida law would apply to their claims. Moreover, they do not respond to the defendants' arguments that this claim should be dismissed for failure to state a claim for which relief may be granted. The court finds both that the plaintiffs have abandoned this claim and that Count IX fails to state a cognizable cause of action. *Accord McLearn*, 2020 WL 1189844, at *10. This "claim" will be dismissed with prejudice.

## IV.    CONCLUSION

For the reasons forth herein, the Complaint will be dismissed in its entirety. The claim based on a "contract of indefinite duration" will be dismissed with prejudice; all other claims will be dismissed without prejudice. An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge